IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| WILBERT LEE HESTAND, JR., #1379065 | § | |
| VS. | § | CIVIL ACTION NO. 4:09cv500 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Wilbert Lee Hestand, Jr., an inmate confined in the Texas prison system, proceeding *in forma pauperis* and *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred for findings of fact, conclusions of law and recommendations for the disposition of the case.

Background

Petitioner is challenging his Grayson County conviction for manufacturing a controlled substance, Cause No. 054250-336. On June 21, 2006, a jury found him guilty and sentenced him to sixty (60) years of imprisonment. The Fifth Court of Appeals affirmed his conviction on December 4, 2007. *Hestand v. State*, No. 05-06-01320-CR, 2007 WL 4239200 (Tex. App.–Dallas Dec 4, 2007, pet. struck). The Texas Court of Criminal Appeals struck his petition for discretionary review (PDR) on March 5, 2008 for non-compliance. PDR No. 0039-08. Petitioner concedes that he did not file a writ of certiorari with the United States Supreme Court. However, he filed an 11.07 application for a writ of habeas corpus in state court, which the Court of Criminal Appeals (CCA) denied without written order based on the findings of the trial court on August 19, 2009.

In the present petition, Petitioner claims he is entitled to relief based on an illegal search and seizure, violations of his due process rights, insufficient evidence, improper extraneous offense evidence admissions, and ineffective assistance of counsel at trial and on appeal. Respondent filed

1

a Response, asserting that Petitioner's claims are without merit. Petitioner did not file a Reply.

Statement of Facts

The Fifth Court of Appeals provided the statement of facts in its opinion:

On April 6, 2005, officers discovered what appeared to be a methamphetamine lab and methamphetamine in a bathroom closet in a garage apartment on property Hestand had listed on parole papers as his home. The 600-square foot apartment was accessible by ladder only and was next to a house occupied by Celia Lozano and her husband. Lozano's son, Jason Freeman, lived in the apartment. On the day the methamphetamine was found, Freeman was at his father's house where he had spent the previous two nights and Hestand and Lozano's sister, Debra Lynch, were at the apartment where they had stayed for two nights.

At trial, Freeman testified he met Hestand through Lynch. According to Freeman, Lynch had been staying with Lozano but was looking for a place she and Hestand could stay together. Because he was staying at his father's house, taking care of his younger brothers while his father was out of town, Freeman gave Lynch and Hestand a key to the apartment and allowed them to stay there. Freeman testified that until he gave a key to Lynch and Hestand, only Lozano and he had access to the apartment. Freeman testified further he did not know the methamphetamine or the lab was in the closet until after Hestand was arrested. Lozano also was unaware of the items found in the closet.

Texas Department of Public Safety officer Victor Patton testified he went to the property on April 6 to arrest Hestand for a parole violation.[FN1] Patton knocked on the door to the house and was greeted by Lozano. After explaining to her why he was there, Lozano directed him to the garage apartment. Patton and Sergeant James Murray, who was serving as back-up, climbed the ladder, knocked on the door, announced their presence, and asked Hestand to step out. When they got no response, they entered the apartment where they found Hestand and Lynch in bed waking up. Patton arrested Hestand while Murray conducted a "protective sweep" of the apartment to ensure nobody else was there and there were no weapons "in plain view." Murray found the methamphetamine and what appeared to be a methamphetamine lab-bottles, chemical containers, red phosphorus, iodine crystals, isopropyl alcohol, plastic tubing and bottles with tubing, stained coffee filters, and "separating liquids"-when he opened the closet. According to Patton, until then, nothing in the apartment indicated any drug activity had occurred or that Hestand was involved with drugs. Hestand did not have any "track marks" and did not appear to be under the influence of drugs and there was no drug paraphernalia or unusual odors. Patton testified that once the closet door was opened, however, he noticed a strong odor associated with the production of methamphetamine.

> FN1. Patton did not explain what the violation was.

Sherman police corporal Jason Jeffcoat testified he was called to the apartment to "secure and retrieve the evidence." Jeffcoat testified he smelled the odor as soon as he walked into the apartment and, based on the condition of the items in the closet, he believed the methamphetamine had already been "through synthesis" or "cooked"

2

and was being "powdered out"-"separated" from oil. According to Jeffcoat, Hestand denied knowing about the methamphetamine and lab. Lynch originally denied knowing about the methamphetamine and lab also but later, after speaking with Hestand, voluntarily admitted they were hers. When asked how methamphetamine is made, however, Lynch was unable to answer. Jeffcoat testified he could not determine how long the methamphetamine had been cooked and that he did not find any belongings of Hestand in the apartment. Nonetheless, because Hestand had told his parole officer he was living there, Jeffcoat believed sufficient evidence existed for Hestand to be "charged" with manufacturing methamphetamine.

Lynch testified she purchased most of the items found, including the methamphetamine,[FN2] and, because they were hers, had pleaded guilty to attempted manufacturing of methamphetamine and was currently in jail. Lynch explained she did not tell Jeffcoat how methamphetamine is made because she had "paid for the recipe" and "wasn't going to give it to [him]." According to Lynch, Hestand did not know about the methamphetamine or lab and had not seen the items because she had kept them in the trunk of her car. When asked how the items got into the apartment, Lynch testified she had not moved them and she did not know who had. Lynch admitted to using methamphetamine and testified, over objection, she had seen Hestand use methamphetamine once. Lynch also acknowledged she and Hestand had been together for a "couple of weeks," Hestand was with her when she purchased many of the items found, and the two had lived out of her car for "awhile."

> FN2. Lynch also testified a few of the items found were not hers.

Hestand did not testify and did not call any witnesses, but presented through his opening and closing statements and cross-examination of witnesses, a theory that he was unaware of the methamphetamine and lab and his only connection to them was his presence in the apartment.

The jury, authorized to convict Hestand as a principal or a party, returned a general verdict of guilty as charged and assessed punishment, enhanced, at sixty years confinement and a $5000 fine.

### Sufficiency of the Evidence

In his third point of error, Hestand asserts the evidence is legally and factually insufficient to support his conviction. In making this argument, Hestand maintains no physical evidence links him to the methamphetamine or lab. Additionally, relying on *Goff v. State,* 777 S.W.2d 418 (Tex.Crim.App.1989), Hestand maintains "nothing eliminates reasonable inferences other than [his] guilt." Because only circumstantial evidence supports his conviction and other reasonable inferences exist, Hestand maintains his conviction should be reversed. We disagree.

We review a challenge to the legal sufficiency of the evidence to support a verdict of guilt by viewing the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. *Evans v. State,* 202 S.W.3d 158, 161 (Tex.Crim.App.2006). Under this standard, the fact-finder is the exclusive judge of the witnesses' credibility and the weight given to the evidence, may draw reasonable inferences from basic to ultimate facts, and is entitled to resolve any conflicts in testimony and reject or accept any or all of the evidence presented by either side. *Jones v. State,* 944 S.W.2d 642,

647 (Tex.Crim.App.1996).

We review a challenge to the factual sufficiency of the evidence to support a conviction by viewing all the evidence under a neutral light and determining whether the fact-finder was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App.2006). In conducting this review, we may substitute our judgment for the fact-finder's on the question of witness credibility and weight of evidence determinations only "to a very limited degree." *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006), *cert. denied,* 128 S.Ct. (2007). We will reverse a verdict of guilty on a factual sufficiency challenge only when we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the verdict. *Id.*

Based on the indictment in this case, to obtain a conviction, the State had to prove Hestand intentionally or knowingly manufactured, by chemical synthesis, methamphetamine in the amount of four grams or more but less than 200 grams, including adulterants and dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(25), 481.102(6), 481.112(a),(d) (Vernon 2003 & Supp.2007). The State could establish this through circumstantial evidence and through evidence Hestand either acted on his own or, acting with intent to promote or assist Lynch with the manufacturing of methamphetamine, he solicited, encouraged, directed, aided, or attempted to aid Lynch. *See* TEX. PEN.CODE ANN. §§ 7.01, 7.02(a)(2) (Vernon 1994); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App.2001) ("conclusion of guilt can rest on combined and cumulative force of all incriminating circumstances").

In arguing no evidence links him to the methamphetamine or lab, Hestand notes he was "merely a guest in the apartment" and there was no noticeable odor associated with methamphetamine production when the officers first entered the apartment. Hestand also notes no fingerprints linked him to the lab and no other drug paraphernalia was found in the apartment. Hestand argues the only evidence linking him to the drugs "was his presence in the apartment, [Lynch's] lack of knowledge as to how the materials got from her car to the closet, and [Lynch's] inability to articulate the manufacturing process." Hestand argues that while this circumstantial evidence may have created an inference that he moved the materials from the car to the closet and may have had "a greater knowledge as to the manufacturing process than [Lynch]," it did not eliminate a reasonable inference that Freeman or Lozano may have placed the items in the closet or that Lynch was "just holding the materials [until] she gained a better understanding of the process." As the State points out, however, the use of the reasonable hypothesis test in the evaluation of the legal sufficiency of the evidence was abandoned sixteen years ago in *Geesa v. State,* 820 S.W.2d 154, 161 (Tex.Crim.App.1991), *overruled on other grounds by Paulson v. State,* 28 S.W.3d 570 (2000). In the analysis of the factual sufficiency of the evidence, the existence of alternative hypotheses raised by the record is considered but is not determinative. *Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App.1999); *see also Goodman v. State,* 66 S .W.3d 283, 298 n. 16 (Tex.Crim.App.2001) (court never held old alternative reasonable hypothesis test must be satisfied for evidence to be factually sufficient).

Viewing the evidence under the appropriate standard, we conclude that from the testimony showing that

    • Hestand had listed the property where the methamphetamine and lab

were found as his home address;

• Hestand was in bed in the apartment with Lynch when the methamphetamine and lab were found and had been there two nights;

• Hestand had been with Lynch when Lynch purchased the various items found in the lab;

• Hestand had lived in the car while the items were stored in the trunk;

• the only other two individuals who had access to the apartment were unaware of the items found in the closet; and

• the closet and, after the closet door was opened, the apartment contained a strong odor associated with the manufacture of methamphetamine

The jury could rationally infer and find beyond a reasonable doubt that Hestand, either acting on his own or as a party, manufactured methamphetamine. *See East v. State,* 722 S.W.2d 170, 171-72 (Tex.App.-Fort Worth 1986, pet. ref'd) (appellant's presence in and control of home containing "inactive" amphetamine laboratory used by a third party, presence of odor associated with manufacture of drugs, and presence of amphetamine supported conviction for amphetamine manufacturing). Although Lynch testified Hestand did not know she had purchased the items and was unaware of the lab, the jury was free to disbelieve this testimony and we will not disturb that finding. *Marshall,* 210 S.W.3d at 625; *Jones,* 944 S.W.2d at 647. We overrule Hestand's third point of error.

*Hestand*, 2007 WL 4239200, at *1-3.

Federal Habeas Corpus Relief

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further

limited by the Antiterrorism and Effective Death Penalty Act of 1996. The new provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1517-18, 146 L. Ed.2d 389 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. 1522-23. Rather, that application must be objectively unreasonable. *Id.* 529 U.S. at 409, 120 S. Ct. at 1521. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003).

The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Beel v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed.2d 914 (2002); *see Williams*, 529 U.S. at 404, 120 S. Ct. at 1519. A state application that is denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993).

Default and Procedural Bar

The record shows that the state trial court made findings, adopted by the CCA, that Petitioner was barred from raising four of his issues in his state habeas application. He now raises two of the same issues in his current federal writ. As it concerns the instant federal petition, the state habeas court found that Petitioner's claims concerning (1) an illegal search or protective sweep and (2) the failure to instruct the jury on the accomplice witness rule were procedurally defaulted from Texas habeas review. The state court found that these claims could have been raised on direct appeal but were not; thus, they were effectively waived for habeas corpus purposes. Because these claims were not raised in a procedurally correct manner, they have been defaulted and are now procedurally barred from federal habeas review. The CCA adopted the state habeas court's findings. *Hestand*, Appl. No. 72,419-01, at cover.

7

Federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-04, 111 S. Ct. 2590, 115 L.Ed.2d 706 (1991). It is well settled under Texas jurisprudence that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Crim. App.1991). The federal courts recognize Texas's procedural default rule concerning the requirements that record claims must be raised on direct appeal. *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir.2005). Because petitioner did not raise such claims on direct appeal and the last court to consider such claims expressly and unambiguously based its denial of relief on a state procedural default, his claims are barred absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565. A federal district court must be deferential to state court findings supported by the record. *Pondexter*, 346 F.3d at 149-152. Petitioner has not shown cause or prejudice.

Additionally, as it concerns Petitioner's claim regarding the illegal search or protective sweep, the Supreme Court has held that federal courts have no authority to review a state court's application of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court. *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052, 49 L. Ed.2d 1067 (1976). Petitioner was not foreclosed from litigating his claim in state court; accordingly, this Court may not review it. *Id*. Furthermore, his allegation concerning the witness accomplice rule is a state rule, which does not raise a federal constitutional claim. *Brown v. Collins*, 937 F.2d 175, 182 n. 12 (5th Cir. 1991).

## Sufficiency of the Evidence

Petitioner claims that the evidence is insufficient to support his conviction. He argues that there was no evidence linking him to the methamphetamine or the lab equipment. However, it is well-settled that sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus in Texas. *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986). The Fifth Circuit has also recognized the same state procedural bar. *West v. Johnson*, 92 F.3d 1385, 1398, n.

18 (5th Cir. 1996) (sufficiency of the evidence may be raised on direct appeal, but not in a habeas corpus proceeding). Thus, the claim is procedurally barred unless Petitioner has demonstrated cause and prejudice or a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed.2d 640 (1991). Petitioner has failed to allege or demonstrate cause and prejudice or that he is actually innocent of the crime. Consequently, this claim is procedurally barred from review.

Even if this issue was not barred, the Fifth Court of Appeals expressly and affirmatively found that the evidence was sufficient to rationally justify the fact-finder's finding of guilty beyond a reasonable doubt. It concluded:

> Viewing the evidence under the appropriate standard, we conclude that from the testimony showing that
>
> • Hestand had listed the property where the methamphetamine and lab were found as his home address;
>
> • Hestand was in bed in the apartment with Lynch when the methamphetamine and lab were found and had been there two nights;
>
> • Hestand had been with Lynch when Lynch purchased the various items found in the lab;
>
> • Hestand had lived in the car while the items were stored in the trunk;
>
> • the only other two individuals who had access to the apartment were unaware of the items found in the closet; and
>
> • the closet and, after the closet door was opened, the apartment contained a strong odor associated with the manufacture of methamphetamine,
>
> the jury could rationally infer and find beyond a reasonable doubt that Hestand, either acting on his own or as a party, manufactured methamphetamine. *See East v. State,* 722 S.W.2d 170, 171-72 (Tex.App.-Fort Worth 1986, pet. ref'd) (appellant's presence in and control of home containing "inactive" amphetamine laboratory used by a third party, presence of odor associated with manufacture of drugs, and presence of amphetamine supported conviction for amphetamine manufacturing). Although Lynch testified Hestand did not know she had purchased the items and was unaware of the lab, the jury was free to disbelieve this testimony and we will not disturb that finding. *Marshall,* 210 S.W.3d at 625; *Jones,* 944 S.W.2d at 647. We overrule Hestand's third point of error.

*Hestand*, 2007 WL 4239200, at *4. Viewing the evidence in the light most favorable to the

prosecution, a rational jury member could have concluded beyond a reasonable doubt that Petitioner manufactured methamphetamine either on his own or as a party. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. State court findings supported by the record are owed deference by a federal district court. *Pondexter*, 346 F.3d at 149-152. Petitioner's contention must because he has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03; *Childress*, 103 F.3d at 1224-25.

## Evidentiary Issue

Petitioner claims that the court's admission of Lynch's testimony violated his right to due process and Rule 404(b) of the Texas Rules of Evidence. However, even if erroneous, state evidentiary rulings are not matters for federal habeas review unless they are of such magnitude as to constitute a denial of fundamental fairness under the Due Process Clause. *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992). The evidence in question must be a "crucial, critical, or highly significant factor" in the contest of the entire trial. *Id*. The test to apply is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). However, he has failed to meet his burden.

Lynch testified that Petitioner had previously used methamphetamine. However, Petitioner has failed to show that admission of the testimony was a violation. Under either Texas or federal law, evidence of prior drug use may be used to rebut defenses and to show intent to participate in the present offense. *See United States v. Thomas*, 348 F.3d 78, 86 (5th Cir. 2003) (evidence of defendant's prior drug possession admissible to rebut the defense and show intent to commit to

10

conspiracy and possession with intent to distribute). In this case, Petitioner disputed that he had any intent to produce methamphetamine or any knowledge that it was in the apartment. Using Lynch's testimony that Petitioner had once used methamphetamine was circumstantial evidence rebutting Petitioner's lack of knowledge defense and showed intent and knowledge. Accordingly, it was admissible. *Id*.

Petitioner has also failed to show that the use of Lynch's testimony violated his due process rights. He has failed to show a denial of fundamental fairness under the Due Process Clause. *Jernigan*, 980 F.2d at 298. He has failed to show that the evidence in question was a "crucial, critical, or highly significant factor" in the contest of the entire trial. *Id*. He has not shown that there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Rogers*, 848 F.2d at 609. Furthermore, the jury was instructed that it could only consider the testimony if it found beyond a reasonable doubt that Petitioner had previously used methamphetamine. There is nothing in the record to show that the jury disregarded the instructions. This issue is without merit.

## Ineffective Assistance of Counsel

Petitioner claims that both his trial and appellate counsel were ineffective.

Legal Standard

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal

defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner must "affirmatively prove," not just allege, prejudice. *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.*, 466 U.S. at 697, 104 S. Ct. 2052.

The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991), *citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453. This standard has been affirmed by the Supreme Court. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed.2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000); *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Furthermore, an appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel where the petitioner did not show trial errors with arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973). Appellate counsel is not required to consult with his client concerning the legal issues to be presented on appeal. *Id.* at 1197. An appellate attorney's duty is to choose among potential issues, using professional judgment as to

their merits – every conceivable issue need not be raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 749, 103 S. Ct. 3308, 3311-12, 77 L. Ed.2d 987 (1983).

Discussion

Petitioner contends that his trial and appellate counsel were ineffective for failing to challenge the protective sweep that uncovered the methamphetamine. He also claims both were ineffective for failing to challenge the lack of a jury instruction on the accomplice witness rule.

A protective sweep has been upheld as constitutional by the Supreme Court. *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed.2d 276 (1990). It is a "quick and limited search of premises, incident to an arrest and conducted to a cursory visual inspection of those places in which a person might be hiding." *Id*. Incident to an arrest, an officer can "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of an arrest from which an attack could be immediately launched." *Id*. at 334. "There must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id*.

The state habeas court considered these issues and found them to be without merit. Officer Murray testified that he conducted the protective sweep of the apartment in order to ensure no other persons were present and no weapons were in plain view. Upon entering the apartment, two people were found in bed, but officers were unsure if other persons were also inside. Based on their experience, Officers Murray and Patton could rationally infer that there might be other individuals present when conducting an arrest of a parolee in violation of parole conditions – especially since there was already one extra person present. Furthermore, the state habeas court pointed out that the closet containing the drugs was adjacent to the bedroom where Petitioner was found. Because the sweep was proper, the search was not illegal. Accordingly, neither trial counsel nor appellate counsel can be ineffective for failing to challenge the protective sweep. Petitioner has also failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors,

the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068.

As for Petitioner's complaint concerning the accomplice witness rule, Article 38.14 of the Texas Code of Criminal Procedure prohibits a conviction based on the testimony of an accomplice, unless there is corroborating evidence connecting the defendant to the crime. Tex. Code Crim. Proc. Ann. art. 38.14. If the cumulative weight of all the corroborating evidence tends to connect the accused with the offense, then the evidence is sufficient. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). The corroborating evidence, whether circumstantial or direct, does not have to establish guilt beyond a reasonable doubt or directly link the accused to the offense by itself. *Id*. All facts and circumstances can be used for corroboration. *Mitchell v. State*, 650 S.W.2d 801, 8071 (Tex. Crim. App. 1983). The state habeas court held that Petitioner's trial counsel was not ineffective for failing to request a jury instruction on the accomplice witness rule because the accomplice, Debra Lynch, did not testify directly against Petitioner. It found that Lynch's testimony did not directly implicate Petitioner and was designed to divert suspicion from him. Lynch stated that Petitioner had no knowledge of the methamphetamine. She testified that she purchased most of the items found, including the methamphetamine. She testified that Petitioner did not know about the methamphetamine or lab and had not seen the items because she had kept them in the trunk of her car. Because Lynch was basically testifying on Petitioner's behalf, there was no reason for counsel to request a jury instruction or object. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance).

Furthermore, the state habeas court held that Lynch's testimony was sufficiently corroborated under the witness accomplice rule; thus, even if counsel had requested the instruction, there was no reasonable probability that the outcome of the trial would have been different. The state habeas court made the following findings:

26. The testimony by officers showed that Hestand had listed the property where the methamphetamine and lab were found as his home address and that Hestand was in bed in the apartment with Lynch when the methamphetamine and lab were found. This corroborated Lynch's testimony regarding how Hestand's temporary residence came to be at the garage apartment.

27. Officers' testimony established that after the closet door was opened, the apartment contained a strong odor associated with the manufacture of methamphetamine. This corroborated Lynch's testimony regarding the purpose of the ingredients she had purchase[d].

28. Testimony from Officer Jeffcoat, that Lynch appeared ill, corroborated Lynch's testimony that she had been ill when she and the applicant moved into the garage apartment.

29. Testimony from Freeman showed that Freeman met Hestand through Lynch. Lynch was looking for a place she and Hestand could stay together. Because he was staying at his father's house, taking care of his younger brothers while his father was out of town, Freeman gave Lynch and Hestand a key to the apartment and allowed them to stay there. This testimony corroborated the testimony from Lynch regarding how she and Hestand came to be staying at the garage apartment.

30. Testimony from both the officers, Freeman and Lozano[,] showed that the only access to the garage apartment was a ladder, corroborating Lynch's testimony of the same.

*Hestand*, Appl. No. 72,419-01, at 81-82. This corroborating evidence was sufficient because it tended to connect Petitioner with the offense. Petitioner has failed to show that there was a reasonable probability that the outcome of the trial would have been different had counsel requested an instruction on the accomplice witness rule. Likewise, he also fails to show that appellate counsel was ineffective for failing to raise the issue on appeal. He has failed to show that, had appellate counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp*, 930 F.2d at 453.

Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. He has also failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; 104 S.

15

Ct. at 2068. Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25.

## Conclusion

Two of Petitioner's claims are procedurally defaulted. Accordingly, they are procedurally barred from federal habeas review. In each of his ineffective assistance of counsel claims, Petitioner has shown neither deficient performance nor prejudice. *Strickland*, 466 U.S. at 694; 104 S. Ct. at 2068. Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947. Further, he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. Accordingly, his petition should be denied.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very

16

issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

It is respectfully recommended that reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 134, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the Court find that the Petitioner is not entitled to a certificate of appealability as to his claims.

<u>Recommendation</u>

It is therefore recommended that the petition be denied and dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except

17

on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 12th day of September, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE